**Opinion issued August 29, 2023**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-22-00311-CR

_____

**ANDREW STEELE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the County Criminal Court at Law No. 16**
**Harris County, Texas**
**Trial Court Case No. 2308578**

---

## MEMORANDUM OPINION

A jury convicted appellant, Andrew Steele, of the Class B misdemeanor offense of driving while intoxicated ("DWI").[1] The trial court assessed punishment

---

[1] *See* TEX. PENAL CODE § 49.04(a)–(b).

at 180 days' confinement but suspended the sentence and placed Steele on community supervision for one year. The judgment of conviction ordered Steele to pay restitution and other fines and fees.

In four issues, Steele argues that: (1) the trial court failed to orally pronounce a sentence of confinement, as well as the imposition of general and special fines, and the court did not orally pronounce the amount of restitution; (2) the trial court erroneously assessed a $20 "pretrial fee" against Steele, but this fee was not applicable to this case; (3) the trial court erroneously assessed a $10 "bond approval fee" against Steele, but Steele's "General Order Bond" stated that no fees were associated with it; and (4) the trial court erroneously required Steele to make a $100 donation to a local women's shelter as a condition of community supervision.

We modify the judgment of the trial court and affirm as modified.

## Background

The State charged Steele with the misdemeanor offense of DWI. Steele was released on bond while the case was pending in the trial court. At a jury trial, the State presented evidence that Steele rear-ended another driver at a red light. The trial court admitted pictures of the two vehicles following the collision. Steele appeared intoxicated at the time of the accident. On an Intoxilyzer test, Steele's breath registered an alcohol concentration of 0.136.

2

After the jury found Steele guilty of the offense of DWI, Steele elected for the trial court to assess punishment. The following constitutes the entirety of the punishment phase of trial:

| | |
|---|---|
| The Court: | And what are we doing on punishment? |
| Defense counsel: | We're going to you, Judge. |
| The Court: | All right. You want me to just do my thing or you want to say stuff? |
| Defense counsel: | Do you have anything you want to put on? |
| The State: | No, Your Honor. I'm okay with you doing your thing. |
| The Court: | Okay. Any objections from the Defense? |
| Defense counsel: | None. |
| The Court: | All right. We'll do one year probation. Condition of probation, the restitution, and then just the standard DWI probation terms and a hundred dollars to Houston Area Women's Shelter. |

In the written judgment of conviction signed on April 21, 2022, the court assessed punishment at 180 days' confinement in the Harris County Jail, but the court suspended the sentence of confinement and placed Steele on community supervision for one year. The court assessed $200 in fines, ordered Steele to pay $270 in court costs and $75 in "reimbursement fees," and required Steele to pay $2,500 in restitution "as assessed in [conditions] of [community supervision]." The form of the judgment included ten different fines that the court could impose. The trial court checked a box next to "EMS, Trauma Fine (Art. 102.0185, Code Crim.

3

Proc.) $100.00." The court also checked a box next to "Fine in Lieu of [Driver's License] Suspension."

The "Conditions of Community Supervision" stated, "On this the 21st day of April, 2022, you are sentenced to 180 days confinement in the COUNTY JAIL probated to 1 year community supervision." The court imposed 24 conditions on Steele, including conditions relating to fines, education courses, and the use of drugs and alcohol. With respect to restitution, Condition 15 ordered Steele to "[p]ay $2,500.00 Restitution at the rate of $250.00 per month beginning 05/21/2022 through [the Harris County Community Supervision Department]." The conditions also required Steele to "[p]ay a donation of $100.00 to HOUSTON AREA WOMENS SHELTER by 10/21/2022." Both Steele and the trial court signed the community supervision conditions.

The "Criminal Bill of Cost," completed by the Harris County District Clerk's Office, specified a total of $455 in court costs to be assessed against Steele. These costs included a $100 "EMS Trauma Fine," a $20 "PreTrial Fee," and a $10 "LEA – Bond Approval Fee."

Steele did not move for a new trial or file any other objection to the judgment in the trial court. This appeal followed.[2]

---

[2] The State filed a motion for leave to file a sur-reply brief. We grant the State's motion and consider the State's sur-reply brief in addressing Steele's appellate issues.

4

## Oral Pronouncement of Sentence

In his first issue, Steele contends that the trial court failed to orally pronounce his sentence of confinement, a general fine, a special fine, and the details of his restitution payment. The written judgment, however, imposed a sentence of confinement, which was probated, and required Steele to pay $200 in fines and $2,500 in restitution. Steele contends that the oral pronouncements—or the lack of pronouncement of a period of confinement and applicable fines—at the punishment phase control over the written judgment. With respect to restitution, Steele requests that we remand the case for a hearing on that issue.

### A.    *Governing Law*

A judgment is the written declaration of the court, signed by the trial judge and entered of record, that shows the conviction or acquittal of the defendant. TEX. CODE CRIM. PROC. art. 42.01, § 1. "The sentence is that part of the judgment, or order revoking a suspension of the imposition of a sentence, that orders that the punishment be carried into execution in the manner prescribed by law." *Id.* art. 42.02; *see id.* art. 42.01, § 1(15), (17)–(18) (providing that judgment shall include term of sentence, date sentence is imposed, and date sentence is to commence). A legal sentence can include confinement for a term of years, a fine, "the fact of shock or regular probation," and sentencing enhancements. *Burg v. State*, 592 S.W.3d 444, 451 (Tex. Crim. App. 2020); *Armstrong v. State*, 340 S.W.3d 759, 767 (Tex. Crim.

App. 2011) (noting that fines assessed against defendant are punitive in nature and part of defendant's sentence).

"Except as provided in Article 42.14, sentence shall be pronounced in the defendant's presence."[3] TEX. CODE CRIM. PROC. art. 42.03, § 1(a); *Taylor v. State*, 131 S.W.3d 497, 500 (Tex. Crim. App. 2004) ("A defendant's sentence must be pronounced orally in his presence."); *Ex parte Madding*, 70 S.W.3d 131, 135 (Tex. Crim. App. 2002) (stating that "imposition of sentence is the crucial moment when all of the parties are physically present at the sentencing hearing and able to hear and respond to the imposition of sentence" and "[o]nce he leaves the courtroom, the defendant begins serving the sentence imposed"). Code of Criminal Procedure Article 42.14(a) provides that "[i]n a misdemeanor case, the judgment and sentence may be rendered in the absence of the defendant." TEX. CODE CRIM. PROC. art. 42.14(a).

---

[3] The Court of Criminal Appeals has held that "[t]he judgment, including the sentence assessed, is just the written declaration and embodiment of that oral pronouncement" of sentence. *Taylor v. State*, 131 S.W.3d 497, 500 (Tex. Crim. App. 2004). Thus, when a conflict exists between the oral pronouncement of sentence and the sentence contained in the written judgment, the oral pronouncement controls. *Id.*; *see Burt v. State*, 445 S.W.3d 752, 757 (Tex. Crim. App. 2014) ("A trial judge has neither the statutory authority nor the discretion to orally pronounce one sentence in front of the defendant, but then enter a different written judgment outside the defendant's presence.").

**B.** *Whether Oral Pronouncement of Sentence Was Required*

On appeal, the parties dispute whether the trial court was required to orally pronounce sentence in Steele's presence.[4] Steele argues that the trial court was required to orally pronounce sentence, citing the general rule found in Article 42.03 providing that "sentence shall be pronounced in the defendant's presence." The State, on the other hand, relies on Article 42.14, which provides an exception to the general pronouncement requirement for misdemeanor cases. We agree with the State that because Steele was charged with and convicted of a misdemeanor offense, the trial court was not required to orally pronounce sentence in his presence.

The Code of Criminal Procedure generally requires sentence to be pronounced in the defendant's presence. *See id.* art. 42.03, § 1(a) ("Except as provided in Article 42.14, sentence *shall* be pronounced in the defendant's presence.") (emphasis added). However, Article 42.03, Section 1(a) specifically states that it applies "[e]xcept as provided in Article 42.14." *Id.* Article 42.14(a) provides: "In a misdemeanor case, the judgment and sentence may be rendered in the absence of the

---

[4]     The parties also dispute whether Steele was sentenced at all, given that the trial court placed him on community supervision following the jury's finding of guilt. Because we conclude that the trial court was not required to orally pronounce sentence in Steele's presence in this misdemeanor case, we do not address whether the trial court's placement of Steele on community supervision means that he was not sentenced.

defendant." *Id.* art. 42.14(a). Driving while intoxicated—the offense for which Steele was convicted—is a Class B misdemeanor. *See* TEX. PENAL CODE § 49.04(b).

As Steele acknowledges, the Dallas Court of Appeals has twice noted in unpublished memorandum opinions that, pursuant to Article 42.14, the trial court may render judgment and sentence in a misdemeanor case in the absence of the defendant.[5] *See State v. Leroy*, No. 05-04-00260-CR, 2005 WL 375294, at *2 (Tex. App.—Dallas Feb. 17, 2005, pet. ref'd) (not designated for publication) ("Sentence in a misdemeanor case, such as appellee's, may be rendered in the defendant's absence."); *Lujan v. State*, No. 05-96-01716-CR, 1998 WL 724818, at *3 (Tex. App.—Dallas Oct. 19, 1998, no pet.) (not designated for publication) (noting that under Article 42.14, "the judgment and sentence in a misdemeanor case may be rendered in the absence of the defendant"). Under the plain language of Article 42.14(a), we agree that the trial court has the authority in misdemeanor cases to render judgment and sentence in the absence of the defendant. *See* TEX. CODE CRIM. PROC. art. 42.14(a); *see Lira v. State*, 666 S.W.3d 498, 505 (Tex. Crim. App. 2023) (stating that when interpreting statutes, we "necessarily focus our attention on the

---

[5] We note that opinions and memorandum opinions in criminal cases that are not designated for publication "have no precedential value." *See* TEX. R. APP. P. 47.7(a); *Rhymes v. State*, 536 S.W.3d 85, 99 n.9 (Tex. App.—Texarkana 2017, pet. ref'd) ("Although unpublished cases have no precedential value, we may take guidance from them as an aid in developing reasoning that may be employed.") (quotations omitted).

plain text of the statutes and attempt to discern the fair, objective meaning of the text at the time of its enactment").

In arguing that the trial court must orally pronounce sentence in the presence of the defendant even in misdemeanor cases, Steele cites two cases from our sister courts that rely on Code of Criminal Procedure Article 33.03. *See In re Hearon*, 228 S.W.3d 466 (Tex. App.—Waco 2007, no pet.) (per curiam); *Keys v. State*, 340 S.W.3d 526 (Tex. App.—Texarkana 2011, order), *disp. on merits*, No. 06-10-00091-CR, 2011 WL 2684909 (Tex. App.—Texarkana July 12, 2011, pet. ref'd) (mem. op., not designated for publication). Article 33.03 provides that "[i]n all prosecutions for felonies, the defendant must be personally present at the trial, and he must likewise be present in all cases of misdemeanor when the punishment or any part thereof is imprisonment in jail," although there is an exception when the defendant voluntarily absents himself from the proceeding. TEX. CODE CRIM. PROC. art. 33.03. In *Hearon*, the defendant was incarcerated pending trial, and he sought mandamus relief to compel the trial court to allow him to plead guilty to a misdemeanor charge in absentia. *See* 228 S.W.3d at 466. The defendant cited Article 42.14 as support. *Id.* The Waco Court of Appeals, however, denied mandamus relief because Article 33.03 "plainly requires a defendant to be present in a misdemeanor case in which the potential range of punishment includes a jail sentence." *Id.* at 466–67.

9

*Keys*, like the present case, involved a misdemeanor DWI offense. *See* 340 S.W.3d at 526–27 & n.1. On appeal, Keys argued that the trial court committed fundamental error by failing to impose his sentence in open court. *Id.* at 527. In concluding that the court lacked appellate jurisdiction because the trial court had not orally pronounced sentence in Keys' presence, the Texarkana Court of Appeals noted that Article 42.03, Section 1(a) requires the sentence to be pronounced orally in the defendant's presence, except Article 42.14 "allows such to be done in the absence of the defendant in a misdemeanor case." *Id.* at 527 & n.3. The court then stated that "[e]ven though this is a misdemeanor case, Article 33.03 requires a defendant to be present in a misdemeanor case in which the potential range of punishment includes a jail sentence." *Id.* at 527 n.3. The Texarkana Court concluded that oral pronouncement in Keys' presence was required and abated the case to allow the trial court to correct the error and orally pronounce sentence. *Id.* at 529.

We do not agree that Article 33.03 requires the trial court to orally pronounce sentence in a defendant's presence in misdemeanor cases. Article 33.03, which falls under Code of Criminal Procedure Chapter 33 concerning the "Mode of Trial," requires that in all prosecutions for felonies, the defendant must be personally present at the trial, and he must likewise "be present in all cases of misdemeanor when the punishment or any part thereof is imprisonment in jail . . . ." TEX. CODE CRIM. PROC. art. 33.03. By contrast, Article 42.14(a), which falls under Code of

10

Criminal Procedure Chapter 42 governing "Judgment and Sentence," provides that "[i]n a misdemeanor case, the judgment and sentence may be rendered in the absence of the defendant." *Id.* art. 42.14(a). The language of Article 42.14(a) does not include any limitation on the types of misdemeanors—such as misdemeanors punishable by fine only—in which the judgment and sentence can be rendered in the defendant's absence.[6] Interpreting Article 33.03 as requiring oral pronouncement of sentence in the presence of the defendant in misdemeanor cases punishable by imprisonment would read language into Article 42.14(a) that is not there. Based on Steele's argument, because a defendant in a misdemeanor case punishable by imprisonment must "be present," sentence must be orally pronounced in his presence, and therefore Article 42.14(a) must only apply to misdemeanors punishable by fine only. But that is not what Article 42.14(a) says.

We conclude that the better construction is that while Article 33.03 requires the presence of a defendant charged with a misdemeanor punishable by

---

[6] We note that Article 42.14(b) provides that, in a felony case, the judgment and sentence may be rendered in the defendant's absence only when five specific criteria are all met. *See* TEX. CODE CRIM. PROC. art. 42.14(b) (providing that felony defendant may be sentenced in absentia when defendant is confined in penal institution, defendant has not been charged with certain felony offenses, defendant waives in writing right to be present at rendition of judgment and sentence, defendant and State enter into written plea agreement, and sentence is pronounced in accordance with plea agreement). The Legislature did not place any restrictions in Article 42.14 on sentencing a defendant in absentia in misdemeanor cases. *See id.* art. 42.14(a) ("In a misdemeanor case, the judgment and sentence may be rendered in the absence of the defendant.").

11

imprisonment "at the trial," the trial court may render judgment and sentence against the defendant in the defendant's absence pursuant to Article 42.14(a). This reading gives effect to both Article 33.03 and Article 42.14(a). Moreover, it does not read language into Article 42.14(a) that the Legislature did not include.[7]

Steele also cites several cases which he argues suggest that oral pronouncement of sentence in the defendant's presence is required even in misdemeanor cases. *See Gutierrez v. State*, No. 04-21-00248-CR, 2022 WL 2135540, at *6 (Tex. App.—San Antonio June 15, 2022, no pet.) (mem. op., not designated for publication); *Weldon v. State*, No. 01-13-00113-CR, 2014 WL 5500484, at *1–2 (Tex. App.—Houston [1st Dist.] Oct. 30, 2014, pet. ref'd) (mem. op., not designated for publication); *Agbogwe v. State*, 414 S.W.3d 820, 841 (Tex. App.—Houston [1st Dist.] 2013, no pet.); *Seeker v. State*, 186 S.W.3d 36, 38–39 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd). In each of these misdemeanor

---

[7]     To the extent Article 33.03 and Article 42.14(a) are irreconcilable, we note that a provision of the Code Construction Act states that "if statutes enacted at the same or different sessions of the legislature are irreconcilable, the statute latest in date of enactment prevails." TEX. GOV'T CODE § 311.025(a). Article 33.03 and Article 42.14 were both initially enacted with the adoption of the Code of Criminal Procedure in 1965. *See* Act of May 27, 1965, 59th Leg., R.S., ch. 722, 1965 Tex. Gen. Laws 317, 442, 502. Article 33.03 has been amended once, in 1979. *See* Act of May 24, 1979, 66th Leg., R.S., ch. 745, 1979 Tex. Gen. Laws 1832, 1832 (codified at TEX. CODE CRIM. PROC. art. 33.03). Article 42.14(a) was amended to reflect its present wording in 2009. *See* Act of May 23, 2009, 81st Leg., R.S., ch. 291, § 2, 2009 Tex. Gen. Laws 798, 799 (codified at TEX. CODE CRIM. PROC. art. 42.14). Article 42.14(a) therefore "prevails" over Article 33.03 as the "statute latest in date."

cases, the appellate issue was whether, in the event of a conflict between the oral pronouncement of sentence and the written judgment, the oral pronouncement controlled. In the two cases in which the court found that a conflict existed, the court held that the oral pronouncement controlled, and the court modified the written judgment to reflect the sentence that was orally pronounced. *See Gutierrez*, 2022 WL 2135540, at *6; *Agbogwe*, 414 S.W.3d at 841.

None of these four cases cited by Steele addressed the issue presented here: whether oral pronouncement of sentence in the defendant's presence was required at all in a misdemeanor case.[8] In each case, the trial court orally pronounced sentence, but a dispute concerning the sentence later arose after the signing of the written judgment. When a conflict actually existed between the oral pronouncement and the written judgment, the courts applied well-established caselaw holding that the oral pronouncement controlled. *See Gutierrez*, 2022 WL 2135540, at *6; *Agbogwe*, 414 S.W.3d at 841; *see also Weldon*, 2014 WL 5500484, at *2 (concluding, after abatement, that record reflecting oral pronouncement was

---

[8] We note that in *Gutierrez v. State*, a case that involved a misdemeanor DWI offense, the San Antonio Court of Appeals stated, "With exceptions that do not apply here, 'sentence shall be pronounced in the defendant's presence.'" No. 04-21-00248-CR, 2022 WL 2135540, at *6 (Tex. App.—San Antonio June 15, 2022, no pet.) (mem. op., not designated for publication) (quoting TEX. CODE CRIM. PROC. art. 42.03, § 1(a)). The San Antonio Court did not address Article 42.14 or discuss any rationale for why Article 42.14(a)—which specifically relates to misdemeanors— did not apply to that case.

inaccurate and when record was corrected to reflect "actual" oral pronouncement, no conflict existed between oral pronouncement and written judgment); *Seeker*, 186 S.W.3d at 39 (concluding that no inconsistency existed because trial court was not required to make oral finding concerning enhancement paragraph). Because these cases did not address the issue before us in this appeal, we conclude that these cases are inapposite.

Nothing in this opinion should be construed as holding that the trial court in a misdemeanor case should not orally pronounce sentence in the defendant's presence. Instead, we merely hold that the trial court did not commit reversible error in this misdemeanor case when it did not orally pronounce, in Steele's presence, that Steele's term of confinement—which the court immediately suspended—would be 180 days or that Steele owed a total of $200 in fines.

## C. *Pronouncement of Restitution Award*

Steele also argues that the trial court did not properly pronounce the restitution that he owed. Relying on the Court of Criminal Appeals' decision in *Burt v. State*, Steele argues that the trial court was required to orally pronounce in his presence not just the fact that he owed restitution, but the amount that he owed.

A crime victim has a statutory right to restitution. *Burt v. State*, 445 S.W.3d 752, 756 (Tex. Crim. App. 2014); TEX. CODE CRIM. PROC. art. 42.037(a) ("In addition to any fine authorized by law, the court that sentences a defendant convicted

14

of an offense may order the defendant to make restitution to any victim of the offense . . . ."). Restitution is punishment. *Ex parte Cavazos*, 203 S.W.3d 333, 338 (Tex. Crim. App. 2006); *see also Burt*, 445 S.W.3d at 756 (stating that restitution serves as appropriate punishment, aids in rehabilitation process, and acts as deterrent to crime). An award of restitution must be included in the trial court's oral pronouncement of sentence. *See Burt*, 445 S.W.3d at 757 (stating that fairness to defendant requires that sentence be pronounced orally in his presence and due process requires that defendant "be given fair notice of all of the terms of his sentence, so that he may object and offer a defense to any terms he believes are inappropriate").

In *Burt*, the Court of Criminal Appeals noted that restitution awards have due process implications, and therefore due process places three limitations on the restitution that a trial court may order: (1) the restitution ordered must be only for an offense for which the defendant is criminally responsible; (2) the restitution must be only for the victim of the offense for which the defendant is charged; and (3) the amount of restitution must be just and supported by a factual basis within the record. *Id.* at 758. The defendant should be given the opportunity to object to the amount of restitution, offer evidence to support his position, and challenge the sufficiency of the evidence or the specific amount due to each victim. *Id.* at 760. "[W]hen it is clear during the sentencing hearing that restitution will be ordered, but the amount or

15

recipients of restitution are not orally pronounced," the appropriate appellate remedy is to remand the case for a hearing on restitution. *Id.* at 758, 761.

The Court of Criminal Appeals has also held that challenges to restitution orders must be raised in the trial court to preserve the complaint for appellate review. *See Garcia v. State*, 663 S.W.3d 92, 94, 97 (Tex. Crim. App. 2022). Although restitution awards can have due process implications, "[d]ue process challenges can be forfeited by failure to object in the trial court." *Id.* at 95. "A timely objection allows the trial court an opportunity to prevent or correct errors." *Id.* at 97. Requiring an objection also "guarantees that opposing counsel will have a fair opportunity to respond to complaints" and "promotes the orderly and effective presentation of the case to the trier of fact." *Id.* (quotations omitted). "Given these considerations, a restitution complaint should be forfeited by a defendant who foregoes the opportunity to address it in the trial court." *Id.*

Here, the trial court stated at the close of trial that it would order restitution, but it did not state an amount. In the written judgment, signed on April 21, 2022, the trial court ordered Steele to pay $2,500 in restitution "as assessed in [conditions] of [community supervision]." On the same day as the trial court signed the written judgment, April 21, 2022, the court and Steele signed Steele's "Conditions of Community Supervision." Condition 15 required Steele to "[p]ay $2,500.00 Restitution at the rate of $250.00 per month beginning 05/21/2022 through

16

HCCSCD." There is no indication in the record that Steele raised any objection to Condition 15 when he signed the conditions of community supervision. Nor did Steele file a motion for new trial.

We conclude that because Steele did not object or otherwise raise a complaint about the restitution order in the trial court, he failed to preserve this complaint for appellate review. *See id.*

We overrule Steele's first issue.

**Imposition of Costs and Other Amounts**

In Steele's second and third issues, he challenges the imposition of two specific costs against him in the bill of costs: a $20 "PreTrial Fee," and a $10 "LEA – Bond Approval Fee." In his fourth issue, he argues that the trial court erroneously required him, as part of the conditions of his community supervision, to make a $100 donation to the Houston Area Women's Shelter.

**A.**     ***Whether Challenged Court Costs Were Proper***

When a defendant in a criminal case is convicted, multiple statutes require the payment of fees as court costs. *Salinas v. State*, 523 S.W.3d 103, 105 (Tex. Crim. App. 2017); *see* TEX. CODE CRIM. PROC. art. 42.16 (requiring, when defendant's punishment is "any other than a fine," that judgment shall "adjudge the costs against the defendant, and order the collection thereof as in other cases"). "[F]ees and costs serve a remedial function by compensating the State for various costs associated

17

with the criminal justice system." *Gipson v. State*, 428 S.W.3d 107, 109 (Tex. Crim. App. 2014).

Code of Criminal Procedure Article 102.011 requires a defendant convicted of a felony or misdemeanor offense to pay certain "reimbursement fees to defray the cost of the services provided in the case by a peace officer." TEX. CODE CRIM. PROC. art. 102.011(a). These fees include "$10 for taking and approving a bond and, if necessary, returning the bond to the courthouse." *Id.* art. 102.011(a)(5). In a related statute, Article 17.42, Section 4(a) provides that "if a court releases an accused on personal bond on the recommendation of a personal bond office, the court shall assess a personal bond reimbursement fee of $20 or three percent of the amount of the bail fixed for the accused, whichever is greater." *Id.* art. 17.42, § 4(a). The court may waive the fee or assess a lesser fee upon a showing of good cause. *Id.*

It is undisputed that Steele was released on a "General Order Bond" pending trial in this case. The bond included a statement that "[t]here are no fees associated with your General Order Bond." The bond was signed by Steele, a Harris County Criminal Court at Law judge, and a "Personal Bond Office Employee/Sheriff's Deputy Harris County, Texas."[9] In the "Criminal Bill of Cost" issued following

---

[9]   The record does not indicate whether this person was an employee of the Personal Bond Office or a Harris County Sheriff's Deputy.

18

Steele's conviction, the assessed costs included a $20 "PreTrial Fee" and a $10 "LEA – Bond Approval Fee."

We agree with the State that, despite the language in the bond itself, the trial court was not only authorized but statutorily *required* to assess a $10 fee "for taking and approving a bond" and a $20 "personal bond reimbursement fee." *See id.* arts. 102.011(a)(5), 17.42, § 4(a). Although the personal bond reimbursement fee may be waived by the trial court upon a showing of good cause, there is no indication in the record that good cause exists to support waiver of this fee. Additionally, Steele has cited no authority holding that language in a bond—such as a statement that "[t]here are no fees associated with your General Order Bond"—controls over mandatory statutory language concerning the assessment of particular fees as court costs.

We overrule Steele's second and third issues.

## B. *Whether Trial Court Properly Ordered Payment as Condition of Community Supervision*

Code of Criminal Procedure Article 42A.651(a) addresses payments by a defendant as part of community supervision and provides:

(a) A judge may not order a defendant to make a payment as a term or condition of community supervision, except for:

(1) the payment of fines, court costs, or restitution to the victim;

(2) reimbursement of a county as described by Article 42A.301(b)(11); or

19

(3)    a payment ordered as a condition that relates personally to the rehabilitation of the defendant or that is otherwise expressly authorized by law.

TEX. CODE CRIM. PROC. art. 42A.651(a); *Ex parte Roberts*, 409 S.W.3d 759, 762 (Tex. App.—San Antonio 2013, no pet.).

In *Ex parte Roberts*, the defendant and her husband engaged in an extortion scheme and used a charitable corporation that they had set up as the recipient of funds from some of the victims of their scheme. 409 S.W.3d at 761. As a condition of community supervision, the trial court ordered Roberts to pay $70,000 to a charity approved by the probation department. *Id.* The San Antonio Court of Appeals held that the trial court did not have the authority to order Roberts "to pay restitution to a different or unrelated charity" that was not one of the victims of her extortion scheme. *Id.* at 763.

The San Antonio Court also concluded that the payment could not be justified under the predecessor statute to article 42A.651(a) because the payment was not "related personally to [Roberts's] rehabilitation." *Id.* at 764. The court noted several examples of payments that could relate personally to the rehabilitation of a defendant—such as payments for alcohol or drug treatment for a DWI defendant, anger management classes for a defendant convicted of assault, or parenting classes for a parent convicted of neglect—but there was no connection between the trial court's ordered payment "and Roberts's rehabilitation, her future integration into

20

society, or her chances of recidivism." *Id.* The San Antonio Court ordered the trial court to delete the condition requiring Roberts to make the $70,000 payment. *Id.* at 764–65.

The State argues that Steele failed to preserve this complaint for appellate review because complaints concerning conditions of community supervision must be raised in the trial court. The Court of Criminal Appeals has held that a trial court has broad discretion in deciding whether to grant community supervision and in determining the conditions of community supervision. *Speth v. State*, 6 S.W.3d 530, 533 (Tex. Crim. App. 1999); TEX. CODE CRIM. PROC. art. 42A.301(a) ("The judge [imposing community supervision] may impose any reasonable condition that is not duplicative of another condition and that is designed to protect or restore the community, protect or restore the victim, or punish, rehabilitate, or reform the defendant.").

Community supervision "is not a right, but a contractual privilege," and community supervision conditions "are terms of the contract entered into between the trial court and the defendant." *Speth*, 6 S.W.3d at 534. As a result, "conditions not objected to are affirmatively accepted as terms of the contract." *Id.* "A defendant who benefits from the contractual privilege of probation, the granting of which does not involve a systemic right or prohibition, must complain at trial to conditions he finds objectionable." *Id.*; TEX. R. APP. P. 33.1(a) (generally requiring, as prerequisite

21

for presenting complaint for appellate review, that complaint was made to trial court with sufficient specificity to make trial court aware of complaint, and that trial court ruled on complaint).

Steele responds that he has not forfeited this complaint for appellate review. In *Marin v. State*, the Court of Criminal Appeals set out a framework for determining what types of rights may be procedurally defaulted, and the court grouped rights into three categories: (1) absolute requirements and prohibitions; (2) rights of litigants that must be implemented unless expressly waived; and (3) rights of litigants that are to be implemented upon request. *See* 851 S.W.2d 275, 279 (Tex. Crim. App. 1993), *overruled on other grounds by Cain v. State*, 947 S.W.2d 262 (Tex. Crim. App. 1997). Absolute requirements and prohibitions "are to be observed even without partisan request" and "can't lawfully be avoided even with partisan consent." *Id.* at 280. An "absolute requirement or prohibition" is "a law that a trial court has a duty to follow even if the parties wish otherwise." *Mendez v. State*, 138 S.W.3d 334, 340 (Tex. Crim. App. 2004). These rights are not forfeitable—or subject to procedural default—and "any party entitled to appeal is authorized to complain that an absolute requirement or prohibition was violated." *Marin*, 851 S.W.2d at 280.

In the years following *Speth*, the Court of Criminal Appeals has stated that it does not "read *Speth* so categorically as to hold that a defendant may not complain

22

for the first time on appeal of a condition of probation which violates an absolute prohibition as envisioned by *Marin*." *Gutierrez v. State*, 380 S.W.3d 167, 175 (Tex. Crim. App. 2012); *see Grado v. State*, 445 S.W.3d 736, 742 (Tex. Crim. App. 2014) ("Only recently have we definitively determined that *Speth's* broad rule does not apply when the contested condition violates a category-one *Marin* right."). A defendant may forfeit "many, if not most, appellate complaints—even most constitutional complaints—about particular conditions of community supervision" if he does not object at trial, and he may "effectively waive any constitutional or statutory waiver-only rights" by agreeing to community supervision. *Gutierrez*, 380 S.W.3d at 175. But a defendant "cannot agree to submit to a condition of community supervision that the criminal justice system simply finds intolerable and which is therefore, by definition, not even an option available to the parties." *Id.* at 175–76.

Steele argues that the complained-of condition here "violates an absolute prohibition as envisioned by *Marin*," *see id.* at 175, because Article 42A.651(a) provides that a trial court "*may not* order a defendant to make a payment as a term or condition of community supervision" except for three specific categories of payments, including "a payment ordered as a condition that relates personally to the rehabilitation of the defendant or that is otherwise expressly authorized by law." TEX. CODE CRIM. PROC. art. 42A.651(a) (emphasis added). He contends that the $100 payment to the Houston Area Women's Shelter does not constitute a payment

"that relates personally to [his] rehabilitation," and therefore the trial court was absolutely prohibited from imposing this payment as a condition of community supervision. We agree.

Because Article 42A.651(a) prohibits the trial court from ordering payment as a condition of community supervision except in limited circumstances, and Steele contends that the challenged payment does not fall within any of the statutorily enumerated circumstances, Steele has raised a complaint that the condition of community supervision violates an "absolute prohibition," or a "category-one *Marin* right" that is not subject to the general rules of procedural default. *See Grado*, 445 S.W.3d at 742. We conclude that Steele may permissibly raise this issue for the first time on appeal.

Turning to the merits of this issue, Steele was convicted of DWI. The trial court suspended Steele's sentence and placed him on community supervision for one year. One of Steele's community supervision terms required him to "[p]ay a donation of $100.00 to HOUSTON AREA WOMENS SHELTER" by October 21, 2022. A payment to a local women's shelter—instead of a payment to, for example, an organization dedicated to reducing the prevalence of intoxicated driving—does not "relate[] personally to the rehabilitation" of Steele. *See* TEX. CODE CRIM. PROC. art. 42A.651(a). As in *Ex parte Roberts*, where the defendant was ordered to make a payment to a charitable organization that was not one of the defendant's victims and

24

was not related to the defendant's extortion scheme, there is no connection here between the payment the trial court ordered Steele to make to the women's shelter and Steele's "rehabilitation," "future integration into society," or his "chances of recidivism" for DWI. *See* 409 S.W.3d at 764. The trial court therefore was not authorized to order this payment as a condition of Steele's community supervision.

We conclude that the trial court erred by requiring Steele, as a condition of his community supervision, to make a $100 donation to the Houston Area Women's Shelter. *See* TEX. CODE CRIM. PROC. art. 42A.651(a); *Ex parte Roberts*, 409 S.W.3d at 764.

We sustain Steele's fourth issue.

## Conclusion

We modify the judgment to delete the condition of Steele's community supervision requiring him to pay a $100 donation to the Houston Area Women's Shelter. We affirm the trial court's judgment as modified in all other respects.

April L. Farris
Justice

Panel consists of Justices Hightower, Rivas-Molloy, and Farris.

Do not publish. TEX. R. APP. P. 47.2(b).